[No. 3500-0-III.   Division Three.   April 29, 1980.]

DANA RICE, ET AL, *Appellants,* v. THE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, *Respondent.*

*Norman R. McNulty, Jr., Lawrence Weiser,* and *Dan Stormer* of *Spokane Legal Services Center,* for appellants.

*Slade Gorton, Attorney General,* and *Walter E. White, Assistant,* for respondent.

GREEN, C.J.—In this consolidated appeal, the plaintiffs challenge the validity of WAC 388–86–120(2)(h),[1] commonly referred to as the 7–day rule. That regulation provides in part that a person in need of noncontinuing general

---

[1] WAC 388–86–120(2)(h) provides:
"If the department is notified within seven days of the date medical care began or within seven days after an individual who was admitted in a coma to a hospital or other treatment facility becomes rational, certification shall cover this period if all eligibility factors have been met. . . . If notification is received in the

medical assistance must notify the Department of Social and Health Services (DSHS) of that fact within 7 days of the date medical care is begun in order to receive coverage from the onset of the care.

Dana Rice's hospitalization began on January 3, 1978, and continued through January 15. At the time she was admitted to the hospital, she was employed and hoped that medical insurance through her job would cover her expenses. When that coverage did not materialize, she submitted an application for medical assistance to DSHS on January 23. Because she had not notified DSHS within 7 days of the onset of treatment, her application was denied.

Violet Baker was admitted to the hospital on March 13, 1977. At that time, she advised the hospital staff that she would need financial assistance in order to pay her bills, but no one notified DSHS of her need. When Violet Baker was released from the hospital on March 23, she took a taxi directly to the local DSHS office and applied for aid. She, too, was denied assistance because her application came after the seventh day of her hospitalization.

Both women requested and received hearings on the denial of their applications. In each case, the Department's action was found proper. The women appealed to the Superior Court where the Department was again affirmed. In this appeal, the women's position is that the 7–day rule is invalid because it creates a criterion for eligibility for medical assistance that is inconsistent with the statutes governing the medical care program. RCW 74.09. We agree.

Under RCW 74.09.070,[2] DSHS is given the authority and responsibility for setting standards to measure the eligibility of persons applying for public assistance. However, those standards are to be consistent with the provisions of

local office subsequent to the seventh day of initiation of service, certification shall begin on the date notification is received, with allowance for mail delivery. Seven days shall include the date of initiation of services but shall not include Saturday, Sunday or legal holidays."

[2]RCW 74.09.070 states in part:

the public assistance statutes and are to comply with their spirit and purpose. RCW 74.08.090;[3] RCW 74.09.900.[4] That purpose, as set out in RCW 74.98.040,[5] is to provide for the public welfare by aiding those in *need* so that they might have a reasonable subsistence compatible with decency and health. Nowhere in RCW Title 74 is it suggested that DSHS is to utilize a time limitation as a basis for eligibility at the expense of persons in need. In fact, the only stated qualifications for a medical care applicant are contained in RCW 74.09.510, which provides:

Medical assistance may be provided in accordance with eligibility requirements established by the department of social and health services to an applicant: (1) Who is in need; (2) who has not made a voluntary assignment of property or cash for the purpose of qualifying for an assistance grant; (3) who is not an inmate of a public institution except as a patient in a medical institution or except as an inmate in a county or city jail or juvenile

---

"The determination of eligibility of recipients for public assistance shall be the responsibility of the department.

" . . .

"The determination of eligibility of medical indigents shall be the responsibility of the department."

[3]RCW 74.08.090 reads:

"The department is hereby authorized to make rules and regulations not inconsistent with the provisions of this title to the end that this title shall be administered uniformly throughout the state, and that the spirit and purpose of this title may be complied with."

[4]RCW 74.09.900 provides:

"All the provisions of Title 74 RCW, not otherwise inconsistent herewith, shall apply to the provisions of this chapter."

[5]RCW 74.98.040 provides:

"It is the purpose and intent of this title to provide for the public welfare by making available, in conjunction with federal matching funds, such public assistance as is necessary to insure to recipients thereof a reasonable subsistence compatible with decency and health."

Additionally, *see* RCW 74.09.020 which states that the purpose of the medical care chapter is "to provide for more efficient administration of medical, dental and allied services to recipients of public assistance and medical indigent persons."

detention facility, or except as an inmate in a public institution who could qualify for federal aid assistance; and (4) who is a resident of the state of Washington.

It is well established that administrative regulations may not limit eligibility for public assistance in derogation of the governing statutes. A regulation which attempts to do so is void and of no effect. *Fecht v. Department of Social & Health Servs.*, 86 Wn.2d 109, 542 P.2d 780 (1975).[6] "[R]ules must be written within the framework and policy of applicable statutes." *Washington Fed'n of State Employees v. Higher Educ. Personnel Bd.*, 87 Wn.2d 823, 827, 557 P.2d 336 (1976); *Kitsap–Mason Dairymen's Ass'n v. State Tax Comm'n*, 77 Wn.2d 812, 815, 467 P.2d 312 (1970).

Here, DSHS has attempted to limit the time within which an application for medical assistance can be made. In doing so, it has exceeded the criteria for determining eligibility established by the legislature. In enacting RCW Title 74, the legislature intended to make assistance available to those Washington residents who are in need. The Department, through the 7–day rule, has limited the availability of such assistance to those who are fortunate enough to have family or some other third party who takes the responsibility of timely notifying DSHS when they cannot. We do not believe the legislature intended that persons less fortunate

---

[6]In *Fecht*, the court voided a regulation which limited eligibility for public assistance on the basis of the applicant's age. *See also Fuller v. Nassau County Dep't of Social Servs.*, 77 Misc. 2d 677, 352 N.Y.S.2d 978 (1974) (voiding regulation which limited the recipient's right to emergency aid from the State to natural disasters such as fire when the statute did not contain such limitations); *Rhodes v. Harder*, 211 Kan. 820, 508 P.2d 959, *aff'd in part, modified in part*, 212 Kan. 500, 512 P.2d 354 (1973) (voiding regulation which prorated payments to providers when available funds proved inadequate to meet the statutory directive that the providers be paid the "reasonable, usual and customary charges" for the services they rendered to medical aid recipients); *Webb v. Swoap*, 40 Cal. App. 3d 191, 114 Cal. Rptr. 897, 901 (1974) (voiding regulation which, without statutory authority, imposed liability on a recipient for repayment of grants lawfully paid pending an unsuccessful appeal).

would be denied benefits accruing prior to the giving of notice or the filing of an application. The power to set a time period for aid is one that should remain with the legislature unless expressly delegated to the Department.[7] In the absence of such legislative delegation, DSHS may use the equitable doctrine of laches to cut off those claims where delay has prejudiced its ability to determine need. Consequently, the trial court erred in upholding the 7-day rule.

The Department's argument in support of the challenged regulation is not persuasive. It cites RCW 74.08.060 which provides:

> The department shall be required to approve or deny the application within forty-five days after the filing thereof and shall immediately notify the applicant in writing of its decision: *Provided,* That if the department is not able within forty-five days, despite due diligence, to secure all information necessary to establish his eligibility, the department is charged to continue to secure such information and if such information, when established, makes applicant eligible, the department shall pay his *grant* from date of authorization or forty-five days after date of application whichever is sooner.

(Second italics ours.) According to the Department, this statute limits coverage to no earlier than the date of application.

We do not find the statute applicable to the medical care provision of the act. RCW 74.09. By its language, the statute is limited to general public assistance "grants", *i.e.,* a money payment awarded directly to the recipient. WAC 388-22-030(28).[8] We are here concerned with "vendor

---

[7] *See, e.g.,* 42 U.S.C. § 1396a(a)(34), in which Congress provided *by statute* that aid would be made available for 3 months prior to the date of application.

[8] "'Grant' means a money payment in the form of a state warrant redeemable at par awarded to a recipient, or to a recipient's guardian, or to the person appointed protective payee for a recipient."

payments"[9] made to a doctor or a hospital for medical services rendered to an individual who is eligible for medical only assistance. WAC 388-22-030(72).

Reversed[10] and remanded for the award of reasonable attorneys' fees pursuant to RCW 74.08.080 and *Tofte v. Department of Social & Health Servs.,* 85 Wn.2d 161, 531 P.2d 808 (1975).

McINTURFF, J., concurs.

ROE, J. (dissenting)—I dissent. We are concerned here solely with a State award, not a federal grant. Under RCW 74.09.070, the DSHS has a duty to determine eligibility for the state medical assistance program. Under WAC 388-86-120(h), the Department must be notified within 7 days of initiation of service, that is, 7 working days, which would mean a minimum of 9 days, including Saturday and Sunday. No statute requires the Department to provide State funds and medical aid benefits rendered prior to the time an application is filed. The question is, how much notice must be given of need? Is it to be 1 week, 1 month, or 6 months after a need arises, or may a beneficiary apply for aid retroactively for an interminable period?

The majority leaves no guidelines but states it is a legislative matter. Until the legislature acts, no one knows what the rule is. The Department does have broad authority to exercise administrative discretion. *Fecht v. Department of Social & Health Servs.,* 86 Wn.2d 109, 542 P.2d 780 (1975). This distinguished the above case from *Michels v. Department of Social & Rehabilitation Servs.,* ___ Mont. ___, 609 P.2d 271 (1980). The opinion of the Montana Supreme

---

[9] "'Vendor payment' means an authorized payment to an individual, corporation or agency for goods furnished or services rendered to an individual eligible for public assistance."

[10] Similarly, on March 26, 1980, the Montana Supreme Court declared a 5-day rule invalid and reversed a trial court decision to the contrary in *Michels v. Department of Social & Rehabilitation Servs.,* ___ Mont. ___, 609 P.2d 271 (1980).

Court does not bind our state, which may dispose of its money on its own terms.

The State is required by statute to set reasonable rules respecting the distribution of its funds. Formerly the period in these cases was limited to 24 hours and later extended to 72 hours, and the present 7–day rule has been in effect for nearly 11 years. The 7–day rule was formerly applied to the federal aid medical care program. It has since been changed by federal regulations to 3 months.

The notification within 7 days of illness as a requirement of eligibility may be made orally by the applicant over the phone from the hospital; it may be made by a friend or the hospital personnel. It is not onerous.

There is nothing unusual about giving prompt notice of need as required by an insurance policy, a claim against a municipality, or a response to legal proceedings. Regardless of what time is set, there will always be some who will not follow the rule and claim for aid in the distant past.

RCW Title 74 intended to make assistance available to those *in need*. The majority suggests that it should make assistance available to those who *have been in need*. The majority implies that the 7–day rule limits availability of assistance to those who have families or some other third party to take the responsibility of notifying DSHS. No reason is suggested why the recipients themselves could not have notified DSHS in these cases. A provision is made to extend the time for a person who is admitted in a coma or is irrational.

The majority rule would be that in the absence of such legislative delegation, DSHS may use the equitable doctrine of laches to cut off claims. No guidelines are provided for laches. There was shown no special circumstances or good cause in either case for extending the time of notification for either of these cases.

The effect of the majority holding is that state money is given for medical services, not for people in need but for those allegedly who had been in need sometime in the indefinite, uncertain past. Unless the State can bear the

burden of demonstrating that the claimants are guilty of laches, rights will accrue this year under such a holding, and since the legislature will probably not convene until 1981, and it may or may not adopt a time limit on notice, DSHS is left with little guidance by which to administer this program.

I find no abuse of administrative discretion and hence would affirm.

Reconsideration denied June 3, 1980.

Review denied by Supreme Court August 15, 1980.