[No. 14843-9-II.   Division Two.   March 16, 1993.]

VIKKI GOODMAN, *Respondent,* v. THE EMPLOYMENT SECURITY DEPARTMENT, *Appellant.*

*Christine O. Gregoire, Attorney General,* and *Jeanne A. Cushman, Assistant,* for appellant.

*Edward E. Younglove* and *Swanson, Parr, Cordes, Younglove, Peeples & Wyckoff,* for respondent.

SEINFELD, J. — The Employment Security Department suspended its employee, Vikki Goodman, for 5 days for insubordination and gross misconduct. Goodman appealed to the Personnel Appeals Board (PAB). In addition to challenging the characterization of her conduct, Goodman argued to the PAB that the suspension violated her constitutional rights to free speech and procedural due process and the

provisions of her collective bargaining agreement. The PAB, without considering either the collective bargaining agreement or constitutional arguments, affirmed the suspension on the factual grounds Goodman's conduct rose to the level of gross misconduct. The Superior Court reversed and the Department appeals. We hold the PAB erred by failing to consider defenses stemming from the collective bargaining agreement, and remand to the PAB for a determination of whether the Department's actions violated the agreement.

Vikki Goodman had worked for the Employment Security Department for approximately 15 years and in 1989 served as a Job Service Specialist II, evaluating unemployment claims and allowing or denying benefits.

After she allowed benefits to a particular claimant, the claimant's former employer complained that benefits were inappropriate. Goodman's manager, James Roland, asked Goodman to consider a possible redetermination. Goodman reviewed the file and decided that the original award of benefits was appropriate.

Roland, after consulting with his superiors, sent the file to the "T-4" unit in Olympia, which reviews difficult cases. The T-4 unit redetermined the claim and denied benefits to the claimant.

Upon learning of the redetermination, Goodman telephoned the T-4 unit and berated the unit and the caseworker involved. She questioned the propriety of the redetermination and voiced her low opinion of the caseworker's personal ethics.

In addition, Goodman told Floyd Richardson, deputy regional director, that the case had been handled improperly and she advised him of her intent to inform the claimant of the circumstances surrounding his claim. Richardson suggested contact with the claimant would be inappropriate, but did not directly prohibit Goodman from communicating with the claimant.

Goodman also wrote the T-4 unit a memo critical of the unit's handling of the case and of numerous employees of the unit. She accused agency management of intervening on behalf of the claimant's employer. Goodman sent a similar

memo to the Commissioner of the Department, Isiah Turner. She then sent copies of the memos to the claimant.

The Department took formal disciplinary action against Goodman, advising her by a hand-delivered letter that she was suspended immediately without pay for a period of 5 working days, for insubordination and gross misconduct.

A paragraph in the letter warned Goodman not to make any future defamatory statements about the agency or any of its employees. Two weeks later, Goodman, through her state employees' union representative, contacted the deputy commissioner who had issued the disciplinary letter. The union expressed concern that the prohibition of future statements by Goodman could have a chilling effect on her duties as a union officer. The Department eventually agreed to reissue the disciplinary letter without the offending paragraph.

Goodman undisputedly is entitled to the various rights set forth in the collective bargaining agreement. With respect to disciplinary actions, the agreement provides as follows:

> In the event of charges or complaints made to Management against any employee . . . no Management disciplinary actions shall be initiated in response to such charge or complaint until the employee has been apprised of the allegation and has had reasonable opportunity to respond.

The Department concedes it did not follow the above procedure in Goodman's case.

A PAB hearing examiner heard Goodman's appeal of her suspension.[1] Goodman put in evidence the collective bargaining agreement, including article 2 which describes employee rights in the event of disciplinary action by management.

The examiner found insufficient evidence to support the insubordination charges, but upheld the suspension on the

---

[1]Goodman also filed a grievance with the Employment Security Department and followed the grievance procedures until an impasse was reached in mediation. She then filed a petition for grievance arbitration with the State Personnel Board. The Board rejected her petition on the basis that it was not filed within 30 days as required by WAC 356-42-055(1).

grounds of gross misconduct. In conclusion of law 10 he stated:

> The failure of the Respondent to contact the Appellant to discuss this disciplinary action prior to being taken is not a grounds [sic] for of [sic] dismissal this is [sic] disciplinary action. Even if the board has jurisdiction over such a contract dispute, the Examiner was provided with no provision of the contract stating that the agency was precluded from disciplinary action for failure to discuss the matter with Appellant first.

The PAB adopted the examiner's findings and conclusions. Goodman appealed the PAB's ruling to the Thurston County Superior Court.

The Superior Court ruled that the PAB erred when it concluded it was precluded from deciding issues arising out of the collective bargaining agreement (conclusion of law 10). The court next determined that the agency had not complied with the disciplinary procedures set forth in the agreement and ordered Goodman fully reinstated with all pay, rights and benefits.

■ Our review of the PAB's decision is de novo, applying the standard of review used by the superior court. *Adams v. Department of Social & Health Servs.*, 38 Wn. App. 13, 14, 683 P.2d 1133 (1984). Accordingly, we consider whether the PAB's order affirming Goodman's suspension was

> [f]ounded on or contained an error of law, which shall specifically include error in construction or application of any pertinent rules or regulations;[2]

We conclude that the PAB erred in its application of the law and that the PAB has authority to consider all defenses raised by an employee in an appeal of a disciplinary matter, so long as the matter is properly before the PAB. The PAB was a proper forum for resolution of this case, and a contract violation is a proper defense to a disciplinary action. Consequently, we remand for the PAB to decide whether the disciplinary procedure breached the collective bargaining agreement.

---

[2] RCW 41.64.130(1)(a).

Created by statute[3] in 1981, the Personnel Appeals Board has authority to decide appeals of employees who are under the jurisdiction of the State Personnel Board. RCW 41.64-.090. The PAB hears appeals of permanent state employees suspended by their superiors. WAC 358-20-010. Employees "adversely affected by a violation of the state civil service law" (RCW 41.06) or by a violation of the merit system rules (WAC Title 356) also may appeal to the PAB. RCW 41.06-.170(2); WAC 358-20-020.

A separate tribunal, the State Personnel Board, RCW 41.06.150, has the task of adopting rules and procedures regarding:

> Agreements between agencies and certified exclusive bargaining representatives providing for grievance procedures and collective negotiations on all personnel matters over which the appointing authority of the appropriate bargaining unit of such agency may lawfully exercise discretion[.]

RCW 41.06.150(13).

The corresponding regulations (WAC 356-42-050(2)) explain that bargaining unit grievance procedures "shall provide for mediation by the director of personnel or his designee. . . . Grievance procedures shall also provide for arbitration by the [state personnel] board in accordance with WAC 356-42-055."

The Department contends that an allegation of a contract violation can be heard only by the State Personnel Board. The Department's analysis depends on its underlying assumption that the State Personnel Board's authority to arbitrate grievances is exclusive and encompasses all complaints which arise out of the collective bargaining agreement, whether affirmative or defensive. Following this reasoning, the Department asserts that the jurisdiction of the PAB is limited to violations of civil service laws or merit system rules. We disagree.

▪ A complete reading of the relevant statutes and regulations actually reveals the following administrative scheme. The PAB hears appeals from suspended employees. The

---

[3]RCW 41.64.010(1).

aggrieved employee may base his or her appeal on any theory, including, but not limited to, violations of civil service laws or merit system rules. *See* WAC 358-20-010 through -020. In the context of its mandate, the PAB must also hear any properly supported defenses that an employee asserts to a disciplinary action, including contract violations such as those alleged by Goodman. *See* WAC 358-20-010.

In a case where an employee seeks relief from the violation of a collective bargaining agreement, he or she may also turn to the State Personnel Board. WAC 356-42-050, -055. As WAC 356-42-105 makes clear, however, until the grievance reaches arbitration, the PAB may hear collective bargaining issues entwined with disciplinary actions or alleged violations of civil service rules or merit system rules. The precise language of the regulation confirms the Personnel Board's intent to offer employees an election of remedies:

> A request for arbitration per WAC 356-42-055 shall not be allowed if the grievant(s) involved has the same charges or issues pending before the personnel board for processing per WAC 356-42-082 or before *the personnel appeals board* for processing per Title 358 WAC.

(Italics ours.) WAC 356-42-105.

The Department's interpretation of the statutory and regulatory scheme governing employee appeals produces a system in which employees, for no particular reason, must forfeit either certain contractually promised remedies or certain statutorily guaranteed remedies. Vikki Goodman's case is illustrative. According to the Department's analysis, Goodman must elect either to: (1) arbitrate her contract claim and abandon her arguments that her behavior did not constitute gross misconduct and was protected speech and that the Department's disciplinary procedure violated her due process rights, or (2) proceed before the PAB and abandon her procedural rights under the collective bargaining agreement. Upon reviewing the pertinent statutes and regulations, we find no basis to conclude that the Legislature or the State Personnel Board intended this result. State employees need

not forgo their rights to a forum to enforce their collective bargaining agreement rights in order to enforce their statutory or constitutional rights of employment.

However, in this case we are unable to determine whether the Department breached the collective bargaining agreement.[4] Pointing in particular to its willingness to strike objectionable language from the disciplinary letter, the Department suggests that the evidence is sufficient to show that it met the notice and hearing requirements of the agreement. The record is inadequate for us to rule on this issue of fact as a matter of law.

In light of our determination that the PAB erred by failing to consider arguments grounded in the collective bargaining agreement, we need not consider Goodman's constitutional challenges.

We affirm the judgment of the Superior Court in part. The Personnel Appeals Board must consider defenses arising out of alleged violations of the collective bargaining agreement. We therefore remand the case to the Personnel Appeals Board for its determination of whether Goodman's suspension violated the collective bargaining agreement.

PETRICH and MORGAN, JJ., concur.

After modification, further reconsideration denied April 27, 1993.

---

[4]We reject the Department's contention that the notice requirement of the agreement is applicable only in a situation where the disciplinary action stems from the allegations of a third party. The plain language of the agreement belies such a conclusion. *See Keeton v. Department of Social & Health Servs.*, 34 Wn. App. 353, 360, 661 P.2d 982, *review denied*, 99 Wn.2d 1022 (1983).