[No. 32754-2-I.    Division One.    November 21, 1994.]

THE CITY OF LAKE FOREST PARK, *Appellant*, v. THE SHORELINES HEARINGS BOARD, ET AL, *Respondents*.

*Thomas Evans*, for appellant.

*Christine O. Gregoire, Attorney General,* and *Lisa Martin, Jeffrey O.C. Lane, Richard A. Heath, Susan Paula Jensen,* and *Deborah L. Cade, Assistants,* for respondents.

GROSSE, J. — The City of Lake Forest Park (City) appeals an order of the Shorelines Hearings Board of the State of Washington (SHB). The SHB ordered the issuance of a shoreline substantial development permit upholding a determination of nonsignificance (DNS) of the applicant Washington State Department of Transportation (DOT). The City appeals the SHB decision, the trial court's determination upholding the procedure(s) used by the SHB, and the trial court's determination that the City must pay for the transcription costs of providing the record used by the SHB and the trial court.

We affirm the SHB and the trial court in all respects. Taken as a whole, the procedures employed by the SHB were fair and in compliance with the requirements of the Administrative Procedure Act (APA), the appearance of fairness doctrine, and due process. Indeed, the City is in no position to complain having received two bites of the apple in terms of the substance of the decision, but not prevailing in either instance. Because the City did not establish any procedural error in the decisions or in their substance, and has not done so here, it is liable for the costs of transcription.

## FACTS OF THE CASE

The DOT sought a permit to construct an eastbound safety shoulder/transit lane on SR 522 (Bothell Way) as it passes through the City and parts of unincorporated King County. The DOT issued a DNS for the project. The City responded to an initial DOT notice of the project stating that the City would not require a permit under the shoreline management program. The DOT applied to the City anyway. The City denied the application and the DOT appealed to the SHB.

A number of shoreline homeowners near the project also challenged the DNS by the DOT. The SHB consolidated the two appeals.

The 10-day hearing began on November 6, 1989, and concluded on December 7, 1989. The SHB members visited the site during the hearing. There was live testimony and there were videotapes shown by the City. On July 6, 1990, the SHB entered an order concluding that the DOT's project was consistent with RCW 90.58 (Shoreline Management Act of 1971) and ordered the City to issue the permit to the DOT.

The City filed its first Petition for Review to the superior court on July 25, 1990, alleging that some members of the SHB were not present for portions of the hearing, that absent members listened to audiotapes of inferior quality, and that some SHB members failed to view certain videotape exhibits presented. The City obtained an ex parte order requiring the SHB to produce the "inferior" audiotapes of the hearing and provide other discovery. Specifically, the City sought certification by all board members that each of them had viewed all videotaped exhibits. The request for the audiotapes was in vain because the tapes reviewed by board members had been erased and reused for other hearings. Due to the passage of time, the SHB stated it was unable to fully verify that all SHB members had viewed the entirety of the videotapes offered.

While the SHB did not concede that the original hearing was flawed, counsel for the SHB suggested a compromise to ensure fairness. The SHB requested an order remanding the matter, withdrawing the original order as a "final" opinion and designating it as "proposed", thereby giving the City and other appellants the opportunity to file exceptions pursuant to former RCW 34.04.110.

After briefing and argument, the initial trial court issued an order directing the SHB to follow the procedures outlined in former RCW 34.04.110 for the taking of exceptions, thereby withdrawing the "final" SHB decision, and designating it a "proposed" opinion.

To speed up the review process the DOT paid for the cost to produce a transcript, both for use by new SHB members and to facilitate administrative review.

The City filed exceptions to the proposed findings, conclusions, and order. The DOT responded to the exceptions. After additional consideration, the SHB rendered its final decision by filing its findings, conclusions, and order on May 20, 1992. In the preparation of this final order, SHB member Williamson was unable to travel from Grays Harbor to Lacey to sign it, so he authorized SHB member Bendor to sign for him. The final order indicates that SHB member Bendor did in fact sign for Williamson.

Under a new cause number, the City filed a second Petition for Review and Injunctive Relief. The City procured a second ex parte order requiring the production of audiotapes and procuring an order to depose SHB members. Additionally, the City sought discovery regarding Williamson's signature.

The trial court entered an order limiting the scope of the depositions of SHB members to the evidence heard and whether the members considered the record as defined by case law. Those depositions indicate SHB members understood the substance of the record, considered the record, and issued a final order after completing a thorough review of the entire proceedings.

The trial court entered an order affirming the SHB decision and denied declaratory relief. The DOT then filed a motion for transcription costs of the record, and a cost bill. Costs were awarded to the DOT by separate order. The City appeals all of the orders.

## ISSUES OF PROCEDURAL IRREGULARITIES

The City claims the first trial court improperly allowed the SHB to withdraw the initial decision by remanding the case pursuant to former RCW 34.04.110. Further, the City argues that the SHB violated former RCW 34.04.110 by allowing the City to file exceptions to a final order. The City contends that allowing the SHB to "reconsider" the record prejudiced it because it demonstrated that the board prejudged the case. The City claims that when viewed as a whole, all of its contentions establish a violation of the appearance of fairness doctrine and the principles of fundamental fairness. A review

of the record and the documents provided by the parties reveals no support of the City's claims.

The appearance of fairness doctrine extends the due process requirement that judicial officers be free of any taint of bias to administrators acting in a quasi-judicial capacity. *Side v. Cheney*, 37 Wn. App. 199, 201, 679 P.2d 403, *review denied*, 101 Wn.2d 1019 (1984). It provides protection against decisionmakers who are actually biased or have a pecuniary interest in the proceedings. The test for a violation of the appearance of fairness doctrine is:

> Would a disinterested person, having been apprised of the totality of a board member's *personal* interest in a matter being acted upon, be reasonably justified in thinking that partiality may exist?

*Belcher v. Kitsap Cy.*, 60 Wn. App. 949, 955, 808 P.2d 750 (1991) (quoting *Swift v. Island Cy.*, 87 Wn.2d 348, 361, 552 P.2d 175 (1976)).

A party claiming an appearance of fairness violation is required to present specific evidence of a violation, not speculation. *Sherman v. Moloney*, 106 Wn.2d 873, 883-84, 725 P.2d 966 (1986); *Gibson v. Auburn*, 50 Wn. App. 661, 670, 748 P.2d 673, *review denied*, 110 Wn.2d 1028 (1988). The City has not demonstrated any personal or pecuniary interest on the part of any of the board members. Therefore, it has not described the applicability, much less the violation, of the appearance of fairness doctrine.

In an action such as this, it is presumed that the SHB performed its quasi-judicial functions properly, by considering the record prior to making the decision. Further, it is sufficient if a member of the board has available for consideration the substance of the hearing being reviewed. *Ledgering v. State*, 63 Wn.2d 94, 101, 385 P.2d 522 (1963); *Belcher v. Kitsap Cy.*, 60 Wn. App. at 955; *West Slope Comm'ty Coun. v. Tacoma*, 18 Wn. App. 328, 337, 569 P.2d 1183 (1977), *review denied*, 89 Wn.2d 1016 (1978). Neither principles of fundamental fairness nor the appearance of fairness doctrine require that every board member attend every hearing as long as he or she understands the sub-

stance of what went on at that missed hearing. *West Slope*, 18 Wn. App. at 337.

■ ■ The depositions reveal that those SHB members participating in the final opinion demonstrated knowledge of the proceeding and considered the entire record before making a decision. Any of the errors alleged by the City in the proposed opinion and order were cured by the remand. The procedures used on remand complied with former RCW 34.04.110, as set forth by the statute and approved in *Bowing v. Board of Trustees*, 85 Wn.2d 300, 310-13, 534 P.2d 1365 (1975). The City claims the SHB prejudged the case on remand, through its use of former RCW 34.04.110, because the SHB had already issued a final opinion in the proceeding. The SHB was ordered to treat the final order in the original proceeding as a proposed decision and to provide an opportunity for all parties to file exceptions. Contrary to the argument of the City, this amounted to giving the City an additional opportunity to present argument and cannot be construed as a violation of either the doctrine of appearance of fairness or of fundamental fairness.

The City would have this court overlook the fact that the SHB employed former RCW 34.04.110 on remand to enable the City to point out errors it perceived, and necessarily have the SHB reconsider. The procedure was exceptionally fair and proper.

> So long as officials of the agency who render the final decision afford an opportunity to the party adversely affected by a proposed decision to file exceptions and present written argument to those officials, RCW 34.04.110, the procedure is proper.

*Valley View Convalescent Home v. Department of Social & Health Servs.*, 24 Wn. App. 192, 201, 599 P.2d 1313 (1979). The cases cited by the City do not stand for the proposition that once a board has issued a final decision, it may not reconsider or decide again. *See Puget Sound Water Quality Defense Fund v. Municipality of Metro. Seattle*, 59 Wn. App. 613, 800 P.2d 387 (1990).

In addition, the City fails to provide any evidence that the SHB impermissibly prejudged the case. The City must

demonstrate tangible, actual bias to establish impermissible prejudgment. Prejudgment by a judge or a quasi-judicial decisionmaker is never presumed and must be affirmatively shown by the party asserting it. *Rich v. Starczewski*, 29 Wn. App. 244, 246, 628 P.2d 831, *review denied*, 96 Wn.2d 1002 (1981). Administrative officers may reconsider, rehear, and redecide cases without necessarily implicating the appearance of fairness doctrine or due process. *See, e.g., State v. Eastabrook*, 58 Wn. App. 805, 816-17, 795 P.2d 151, *review denied*, 115 Wn.2d 1031 (1990). The City fails to show how a remand with the opportunity for exceptions is a violation of the fairness doctrine or due process.

The City also argues that under former RCW 34.04.110 the decision must be a proposed decision from the outset. It must never be designated as final. The City claims the original decision was designated as a final decision and therefore the statutory process approved in *Bowing* cannot be used. The City cites no support for this proposition and we find no merit in it.

Next, the City claims that SHB member Bendor illegally signed another board member's name (Williamson) to the opinion by proxy invalidating the decision because such a procedure is unauthorized. The trial court found that the City offered no authority to support its contention that the act of signing is actual decisionmaking that may not be delegated. Instead, the trial court found the signing to be a ministerial act that could be delegated to another board member after Williamson made his decision. The City claims that because Williamson did not sign personally, it is questionable whether he made his own decision or whether he merely requested Bendor to sign his name to whatever decision was reached.

First, the City did not assign error to the trial court's finding regarding the fact of "nondelegation" by Williamson of his discretionary decision-making powers. Second, the trial court was correct that the City did not provide any authority for its argument that delegating a ministerial task to another board member invalidates the decision. In fact,

the City fails to show how the act of not personally signing the paper denotes that Williamson did not necessarily consider the underlying issues.

Although there is no case in Washington exactly on point contemplating the signing of an administrative order as a ministerial act, there are cases considering the issue of when such powers can be delegated. In *In re Puget Sound Pilots Ass'n*, 63 Wn.2d 142, 145-46, 385 P.2d 711 (1963), the court cited an American Jurisprudence section regarding a question of whether an administrative officer in whom certain powers are vested or upon whom certain duties are imposed may deputize others to exercise such powers. The case held that the function delegated was the quasi-judicial power, thus nondelegable. In so answering, the court quoted that "[m]erely ministerial functions may be delegated to assistants whose employment is authorized, but there is no authority to delegate acts discretionary or quasi-judicial in nature." *Puget Sound Pilots Ass'n*, 63 Wn.2d at 146 (quoting 42 Am. Jur. *Public Administrative Law* § 73). *See also Storey v. Seattle*, 124 Wash. 598, 604, 215 P. 514 (1923).

The case of *Bankers' Ins. Co. v. Florida*, 437 So. 2d 708 (Fla. Dist. Ct. App. 1983) is instructive. There, a statute provided that a judge should sign certain certificates of estreature. A deputy clerk typed in the name of the judge and signed below. Later, after challenge, the judge entered an order nunc pro tunc stating that the original certificates were signed by the deputy clerk at the direction of the court, and then the judge personally signed nunc pro tunc certificates to each bond.

The court held that the judge's signature was a ministerial act which he could delegate to a deputy clerk. The court went on to say that even if the signing did not explicitly comply with the requirements of the statute, the insurance company failed to show any prejudice which would have justified the court in setting aside the estreature.

As in the Florida case, the City's contention relates to a technicality that does not affect substantive rights and

duties in the case. The City has failed to show prejudice, or that board member Williamson's direction to Bendor was anything but ministerial. The trial court did not err in concluding that the proxy to sign the decision was not improper as it was properly delegated.

## Costs of Transcription

The City contends it is not liable for the costs related to having the record transcribed on appeal. It claims the costs arose strictly out of its first appeal to the superior court, and not the second appeal.

Under *Portage Bay-Roanoke Park Comm'ty Coun. v. Shore-lines Hearings Bd.*, 92 Wn.2d 1, 9, 593 P.2d 151 (1979), it is the responsibility of the parties to pay for the transcription of the record. The cost of transcription should be borne initially by the party appealing and, then recovered, if necessary, by the prevailing party. *Bennett v. Board of Adj.*, 23 Wn. App. 698, 701, 597 P.2d 939 (1979); RCW 4.84.030; RAP 14.3. *See also* former RCW 34.04.090(6) (providing for transcripts of hearings furnished to any party upon request and payment).

The DOT funded the transcription to expedite the appeal process. Under the original Petition for Review and subsequent ex parte order procured by it, the City claimed that in light of the entire record, the SHB decision was clearly erroneous. Thus, the DOT had the entire proceeding transcribed.

The City claims the DOT sought the verbatim transcript for its own purpose to facilitate review under former RCW 34.04.110 and that the DOT agreed to pay the transcription costs. The City asserts that its claims were limited and a limited record would have sufficed in this case. Further, the City claims it prevailed on the initial appeal in which the SHB withdrew its final opinion, made it a proposed one, and agreed to a remand to ensure full consideration.

The City relies on the case of *Zoutendyk v. Washington State Patrol*, 27 Wn. App. 65, 616 P.2d 674 (1980), *aff'd*, 95 Wn.2d 693, 628 P.2d 1308 (1981) claiming that the decision directs that there is no recoupment of costs of transcription

where both the DOT and the SHB needed the transcripts to review upon remand. The case does not support the City's cause as claimed. In *Zoutendyk,* a civil service case, the court distinguished the APA, holding that under the civil service statutes and Initiative 207, there is no recoupment of the cost of transcription of a record used on appeal. Here, however, we are dealing with the former APA and *Zoutendyk* does not apply.

The case of *Skold v. Johnson,* 29 Wn. App. 541, 553, 630 P.2d 456, *review denied,* 96 Wn.2d 1003 (1981) held that a remand for additional consideration is not a determination that the administrative agency is wrong, but merely that the court was not satisfied on the basis of the record. While the City did not continue its appeal under the original cause number and chose to proceed under a new one, the basis for the appeal remained the same, the City's claim that the SHB's decision was procedurally flawed. Nonetheless, the City did not establish any procedural error or other violation by the SHB. Thus, the DOT is the prevailing party and under the cases of *Portage Bay, Bennett,* and *McKinlay v. Department of Social & Health Servs.,* 51 Wn. App. 491, 495, 754 P.2d 143 (1988), it would recover its cost of transcription.

The trial court also held that the DOT and the SHB are entitled to statutory attorney fees of $125 and costs. The SHB is seeking costs of mailing ($71.46) and its statutory attorney fees. The DOT sought statutory attorney fees, as well as the costs of transcription discussed above. The City claims they are not costs available in a review action under RCW 4.84.030. The DOT disagrees and claims that statutory attorney fees are available for a "record" appeal. The DOT asserts that former RCW 34.04.130 invokes the jurisdiction of the superior courts, and necessarily, the statutes pertaining to civil procedure, RCW 4.84.030 and RCW 4.84.080(1). A review of these statutes supports the claims of the SHB and the DOT. The trial court did not err.

A majority of the panel has determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be

filed for public record pursuant to RCW 2.06.040, and it is so ordered.

PEKELIS, C.J., and BECKER, J., concur.